ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Dennis S. Ellis (State Bar No. 178196)
  dellis@egcfirm.com
Trent B. Copeland (State Bar No. 136890)
  tcopeland@egcfirm.com
Ryan Q. Keech (State Bar No. 280306)
  rkeech@egcfirm.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

FRANK SIMS & STOLPER LLP
Jason Frank (State Bar No. 190957)
  jfrank@lawfss.com
Scott H. Sims (State Bar No. 234148)
  ssims@lawfss.com
Andrew D. Stolper (State Bar No. 205462)
  astolper@lawfss.com
19800 MacArthur Blvd., Suite 855
Irvine, California 92612
Telephone: (949) 210-2400
Facsimile: (949) 201-2405

(Additional Counsel on Signature Page)

Attorneys for Plaintiffs Aaron Braxton, Gia Gray,
Bryan Brown, Paul Martin, on behalf of
themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AARON BRAXTON, GIA GRAY, BRYAN BROWN AND PAUL MARTIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation; WELLS FARGO HOME MORTGAGE, INC., a Delaware corporation; WELLS FARGO & CO., a Delaware corporation, | Case No. 3:22-cv-01748-JD<br><br>Honorable James Donato<br><br>**THE *BRAXTON* PLAINTIFFS' OPPOSITION TO THE MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL FILED BY GUSTAFSON GLUEK PLLC**<br><br>Date:      October 20, 2022<br>Time:      10:00 a.m.<br>Location :  Courtroom 11<br>            United States Courthouse<br>            450 Golden Gate Avenue<br>            San Francisco, CA  94102 |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...............................................................................................III

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.      PRELIMINARY STATEMENT ..............................................................................1

II.     BACKGROUND ........................................................................................................3

        A.      Procedural History ........................................................................................3

                1.      The Complaints .................................................................................3

                2.      Wells Fargo's Motion to Dismiss *Braxton* ..................................5

        B.      The Advanced *Braxton* Amended Complaint and the *Perkins* Complaint ...............6

III.    LEGAL STANDARDS ..............................................................................................8

        A.      Motion to Consolidate ...................................................................................8

        B.      Motion to Appoint Interim Lead Counsel ....................................................9

IV.     ARGUMENT .............................................................................................................10

        A.      Consolidation Would Prejudice the *Braxton* Class by Diluting Its Claims and Slowing Its Substantial Progress ...............................................10

                1.      The *Braxton* Class Will Be Prejudiced by the Dilution of Its Claims ..........10

                2.      The *Braxton* Class Will Be Prejudiced by the Delay Consolidation Would Cause .................................................................10

                3.      The Classes Across the Cases Are Different ................................11

                4.      Any Convenience and Economy from Consolidation Will Not Override the Prejudice to the *Braxton* Class ................................11

        B.      The *Braxton* Firms Must Lead the *Braxton* Class ...............................12

                1.      The *Braxton* Firms Filed the First and Only Action on Behalf of Black Refinancing Applicants ...............................................12

                2.      The *Braxton* Complaint is the Most Comprehensive Pleading ...................13

                3.      The *Braxton* Firms Are Experienced in Both Prosecuting *and* Defending Class Actions .................................................................14

                4.      The *Braxton* Firms Are Willing to Commit Significant Resources to This Case .....................................................................15

V.      CONCLUSION .........................................................................................................15

ATTORNEY ATTESTATION .........................................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

## <u>FEDERAL CASES</u>

3

*Anderson Living Tr. v. WPX Energy Prod., LLC,*
    297 F.R.D. 622 (D.N.M. 2014) ............................................................................................3, 12

4

5

*Azpeitia v. Tesoro Ref. & Mktg. Co. LLC,*
    No. 17-cv-00123-JST, 2017 WL 4071368 (N.D. Cal. Sept. 14, 2017).......................................9

6

*Cadena v. Am. Honda Motor Co.,*
    No. 18-cv-4007-MWF (PJWx), 2020 WL 3107798 (C.D.Cal. June 10, 2020) ..............3, 13, 14

7

*Campbell v. PricewaterhouseCoopers,*
    No. CIV S-06-2376LKK/GGH, 2008 WL 3836972 (E.D. Cal. Aug. 14, 2008)............... *passim*

8

9

*Case v. Merlin Entm'ts Grp. U.S. Holdings Inc.,*
    No. 20-cv-01049 JAH-MSB, 2021 WL 1195813 (S.D.Cal. Mar. 30, 2021) ...........................13

10

*Cook v. AT&T Mobility, LLC,*
    No. 10-cv-8870 R (OPx)) U.S.Dist.LEXIS 168372 (C.D.Cal. Jan. 7, 2011)..............................8

11

12

*In re Apple Inc. S'holder Derivative Litig.,*
    No. 19-cv-05153-YGR, 2020 WL 3507426 (N.D. Cal. June 29, 2020) ...................................12

13

*In re Cree, Inc. Sec. Litig.,*
    219 F.R.D. 369 (M.D.N.C. 2003) ............................................................................................15

14

15

*In re GSE Bonds Antitrust Litig.,*
    377 F. Supp. 3d 437 (S.D.N.Y. 2019) .....................................................................................13

16

17

*In re Seagate Tech. LLC Litig.,*
    No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016)....................................9

18

19

*Jackson v. City & Cty. of San Francisco,*
    No. C 09-2143 RS, 2010 WL 11582918 (N.D. Cal. Dec. 16, 2010) ........................................10

20

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir.1990)..................................................................................................3, 9

21

22

*LeBeau v. U.S.,*
    222 F.R.D. 613 (D.S.D. 2004) .................................................................................................15

23

24

*Lopez v. Liberty Mut. Ins. Co.,*
    No. 14-cv-05576 BRO (JCx), 2014 WL 12853283 (C.D. Cal. Oct. 24, 2014).........................11

25

*Lowery v. Spotify USA Inc.,*
    No. 5-cv-09929-BRO (RAOx), 2016 WL 6818756 (C.D. Cal. May 23, 2016).........................13

26

27

28

1

2

*Morgan v. Napolitano*,
   No. CIV. S-09-2649 LKK, 2012 WL 4755034 (E.D. Cal. Oct. 4, 2012) ...................................9

3

*Potzner v. Tommie Copper Inc.*,
   2016 WL 304746 (S.D.N.Y. Jan. 4, 2016) ...............................................................................13

4

5

*Robbins v. Phillips 66 Co.*,
   No. 18-cv-00292-RS, 2019 WL 13119275 (N.D. Cal. Aug. 8, 2019) .....................................12

6

7

*Sanders v. VeriFone Sys., Inc.*,
   No. 13-cv-01038-EJD, 2013 WL 5550435, at *2 (N.D. Cal. Oct. 7, 2013) ...........................10

8

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
   720 F. Supp. 805 (N.D. Cal. 1989) .............................................................................................2

9

## RULES

10

Fed. R. Civ. P. 23(g)........................................................................................................................15

11

Fed. R. Civ. P. 23(g)(1)(A) .........................................................................................................9, 10

12

Fed. R. Civ. P. 23(g)(1)(B)..............................................................................................................10

13

14

Fed. R. Civ. P. 23(g)(2)....................................................................................................................15

15

Fed. R. Civ. P. 23(g)(3).....................................................................................................................9

16

Fed. R. Civ. P. 26.............................................................................................................................11

17

## OTHER AUTHORITIES

18

*Appointment of Class Counsel*, 7B Fed. Prac. & Proc. Civ. § 1802.3 (3d ed.)................................10

19

Manual for Complex Litigation (Fourth) § 21.11 (2004)...................................................................9

20

21

22

23

24

25

26

27

28

2105464.2

Case No. 3:22-cv-01748-JD

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION FOR APPOINTMENT
OF INTERIM LEAD COUNSEL FILED BY GUSTAFSON GLUEK PLLC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     PRELIMINARY STATEMENT

3    Plaintiffs agree on at least one point—Wells Fargo's treatment of minority refinancing

4  applicants during the COVID-19 pandemic was blatantly discriminatory.  The *Braxton* Plaintiffs,

5  who are exclusively Black refinance applicants, however, agree with the Court that their claims

6  are not (and should not be) "subsumed" in the claims of the other class representative plaintiffs in

7  *Perkins*, *Williams*, *Ebo, Pope* and *Thomas*.[1]  Wells Fargo's discrimination was most pernicious

8  when it came to Black applicants who sought to refinance their mortgages.  The *Braxton* Plaintiffs

9  identified the extreme treatment of Black homeowners when they first prepared their claims

10  against Wells Fargo, and the *Braxton* Plaintiffs' ongoing investigation has confirmed the invidious

11  discrimination faced by Black homeowners at the hands of Wells Fargo.  For this reason, the

12  Court should not force the *Braxton* class to merge with classes seeking relief on behalf of *all*

13  minorities.  Nor, as explained in the *Braxton* Plaintiffs' Opposition to Wells Fargo Bank, N.A. and

14  Wells Fargo & Company's Motion to Consolidate,[2] should the Court force the *Braxton* class into a

15  case involving claims beyond discrimination in refinancing.  The *Perkins* Plaintiffs' Motion for

16  Appointment of Interim Lead Counsel should, therefore, be denied.

17    A motion for consolidation should not be granted when consolidation would impede

18  justice and infringe the interests of the parties.  *Campbell v. PricewaterhouseCoopers*, No. CIV S-

19  06-2376LKK/GGH, 2008 WL 3836972, at *3 (E.D. Cal. Aug. 14, 2008) ("Considerations of

20  convenience and economy must yield to a paramount concern for a fair and impartial trial.").  It is

21

22

23  ─────────────────

[1]  Class counsel in *Williams v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-00990-JD ("*Williams*"), *Ebo v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-02535-JD ("*Ebo*"); *Pope v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01793-JD ("*Pope*"); and *Thomas v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01931-JD ("*Thomas*") likewise seek to consolidate and be appointed as interim lead counsel, just as Gustafson Gluek ("Gustafson") does, which is not surprising as each of these cases would be considered later filed with respect to the claims of Black refinancing applicants, as Braxton was the first case to assert such claims.

[2]  Pursuant to the concurrently filed Request for Judicial Notice, the *Braxton* Plaintiffs ask this Court to take judicial notice of Plaintiffs Aaron Braxton et. al's Opposition to Wells Fargo Bank, N.A. and Wells Fargo & Company's Motion to Consolidate, filed on August 26, 2022, in the matter of *Williams v. Wells Fargo*, Case No. 3:22-cv-00990-JD, at Dkt. 70, a true and correct copy of which is attached to the concurrently filed Request for Judicial Notice as Exhibit D, and ask it to consider the points and authorities referenced therein when ruling on this motion.

1   the district court's responsibility to ensure that the parties are not prejudiced by consolidation.

2   *Southwest. Marine, Inc. v. Triple A Mach. Shop, Inc.,* 720 F. Supp. 805, 807 (N.D. Cal. 1989) ("To

3   determine whether to consolidate, a court weighs the interest of judicial convenience against the

4   potential for delay, confusion and prejudice caused by consolidation.").

5          The consequence of consolidating the related actions here is the dilution of *Braxton*'s

6   narrow refinancing claims into broader residential credit claims that, as the *Braxton* Plaintiffs have

7   already demonstrated, would potentially obscure Wells Fargo's established and extensive

8   discrimination against Black homeowners with respect to refinancing.  Unlike *Perkins* and other

9   cases pending before this Court, *Braxton* is specifically and *solely* about discrimination against

10  Black homeowners in the mortgage refinancing process beginning in or around January 2018.

11  Combining the *Braxton* Plaintiffs with the *Perkins* putative class—which includes all minority

12  applicants *and* mortgage origination applicants–-could hurt the *Braxton* Plaintiffs' ability to certify

13  their class.  The *Braxton* Plaintiffs filed on behalf of only Black homeowners discriminated

14  against in the refinancing process, in part, because of the ease of certifying their class, and they

15  will be prejudiced if they are denied that opportunity.

16         The fact remains, as the *Braxton* Plaintiffs illustrated in their opposition to Wells Fargo's

17  motion to consolidate, that consolidation is inappropriate when, as here, concerns of "delay,

18  confusion, and prejudice" outweigh "the interest of judicial convenience."  *Southwest Marine, Inc.*

19  *v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 807 (N.D. Cal. 1989).  Overall, "considerations

20  of convenience and economy must yield to a paramount concern for a fair and impartial trial."

21  *Campbell*, 2008 WL 3836972, at *3 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1484 (2d

22  Cir. 1990)).  Purported convenience and economy cannot "override the Plaintiffs' autonomy in

23  mastering their own complaints."  *Anderson Living Tr. v. WPX Energy Prod., LLC*, 297 F.R.D.

24  622, 631 (D.N.M. 2014).  This is especially true when any efficiencies can be achieved without

25  formal consolidation.  *Campbell*, 2008 WL 3836972, at *2-3 ("[M]any of the efficiency gains

26  sought to be achieved by consolidation can also be achieved without consolidation.").

27         In addition, it would be inappropriate to allow the attorneys who filed the *Perkins* case—

28  filed three months after Braxton—to usurp control of the *Braxton* case from the firms who initially

filed the only claims solely on behalf of Black homeowners.  As noted, the *Braxton* claims have been substantially developed already, and the *Braxton* amended complaint is far more detailed than the complaint filed in *Perkins*, including relaying information gleaned from numerous confidential informants.  *See Cadena v. Am. Honda Motor Co. Inc.*, 18-cv-4007-MWF (PJWx), 2020 WL 3107798, at *4 (C.D. Cal. June 9, 2020) (selecting as interim lead counsel the two firms that prepared the most "detailed complaints").  Taking the *Braxton* case away from the *Braxton* Firms, whose lead counsel and attorneys are uniquely situated to address the discrimination against Black homeowners, would, *inter alia*, prejudice the *Braxton* class by removing the counsel that has singularly promoted the interests of solely Black homeowner refinance applicants since filing the first and only class action on behalf of such applicants.

The *Braxton* Firms have demonstrated leadership and the ability to act in the best interests of the class by independently pleading a strong, well-supported complaint.  Given the *Braxton* Plaintiffs' considerable development of their case at this preliminary stage (and given the *Braxton* Firms' qualifications to lead the class), the Court should appoint interim lead counsel the firms who brought the *Braxton* case for Black homeowners who sought refinancing from Wells Fargo and were denied for discriminatory reasons.[3]

## II.  BACKGROUND

### A.  Procedural History

#### 1.  The Complaints

On March 18, 2022, Plaintiff Aaron Braxton and the *Braxton* Firms (Ellis George Cipollone O'Brien Annaguey LLP ("EGC") and Frank, Sims, & Stolper LLP ("FSS")) filed the first putative class action against Wells Fargo on behalf of Black homeowners who had submitted refinance

---

[3]  Also pursuant to the concurrently filed Request for Judicial Notice, the *Braxton* Plaintiffs ask this Court to take judicial notice of Plaintiffs Aaron Braxton et. al.'s Motion for Appointment of Interim Lead Counsel for a Putative Refinancing Class, filed on July 28, 2022 in the matter of *Braxton v. Wells Fargo*, Case No. 4:22-cv-01748-JD, at Dkt. 45, a true and correct copy of which is attached to the concurrently filed Request for Judicial Notice as Exhibit A, as well as the Declarations of Dennis S. Ellis and Jason M. Frank in support of that motion, attached to the Request for Judicial Notice as Exhibits B and C, and ask it to consider the points and authorities referenced therein when ruling on this motion.

applications to Wells Fargo and were harmed by Wells Fargo's race-based discrimination.  Dkt. 1.[4]

Subsequently, the *Braxton* Plaintiffs filed a First Amended Complaint ("FAC") providing a detailed

account of Wells Fargo's refinancing application process, its increased reliance on algorithms, and

its CORE automated underwriting system.  Dkt. 14 at ¶¶ 70-78.

There are five additional putative class actions pending in this District:  (1) *Williams v. Wells

Fargo Bank, N.A.*, Case No. 3:22-cv-0090-JD; (2) *Pope v. Wells Fargo Bank, N.A.*, Case No. 3:22-

cv-01793-JD; (3) *Thomas v. Wells Fargo Bank, N.A.*, Case No. 3:22-cv-01931-JD; (4) *Ebo v. Wells

Fargo Bank, N.A.*, Case No. 3:22-cv-02535-JD; and (5) *Perkins, et al. v. Wells Fargo, N.A.*, Case

No. 3:22-cv-03455-JD.  The Court has already related all six of these pending actions.

The *Williams* case was originally filed on February 17, 2022, on behalf of a broad class of

African Americans who applied for *any* credit related to residential real estate.  Case No. 3:22-cv-

0090, Dkt. 1 at ¶ 19.  The initial *Williams* complaint made no allegations about refinancing, much

less about how Wells Fargo's refinancing practices were specifically designed to discriminate

against Black applicants.  After the *Braxton* case was filed, the *Williams* plaintiffs amended their

complaint to include scant allegations about discrimination in refinancing but, unlike *Braxton*, the

*Williams* plaintiffs continued to seek to represent a class of all African Americans discriminated

against with respect to *all* residential real estate loan applications over the course of an undefined

period of time.  Case No. 3:22-cv-0090, Dkt. 22.

As to the four other pending actions, the *Pope* and *Thomas* actions were filed subsequent

to the *Braxton* action and largely repeated the *Braxton* allegations.  The proposed classes in *Pope*

and *Thomas*, while limited to discrimination in refinancing seek to represent a class of "all first

and second lien Wells Fargo *minority* [not limited to Black] mortgage refinance applicants …

whose refinancing applications were discriminatorily denied."  Case No. 3:22-cv-01793, Dkt. 6 at

¶ 34; Case No. 3:22-cv-01931, Dkt. 1 at ¶ 35 (emphasis added).

The *Ebo* and *Perkins* plaintiffs who also filed their lawsuits after *Braxton*, like the

*Williams* plaintiffs, seek to represent classes of applicants discriminated against with respect to

---

[4] Unless otherwise noted, citations to "Dkt." refer to docket entries in *Braxton v. Wells Fargo*, Case No. 3:22-cv-01748-JD.

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION FOR APPOINTMENT
OF INTERIM LEAD COUNSEL FILED BY GUSTAFSON GLUEK PLLC

mortgage loans as well as refinancing. *Ebo* proposes a class of "[a]ll Black Americans [] who submitted applications to obtain or refinance a mortgage loan with respect to residential real property" and suffered from discrimination during an undefined period of time. Case No. 3:22-cv-02535, Dkt. 1 at ¶ 50. *Perkins* proposes a class of all minority applicants who suffered discrimination in financing or refinancing: "[a]ll Black persons, as well as other racial minorities [who] submitted, or attempted to submit, an application to finance or refinance their home mortgage." Case No. 3:22-cv-03455, Dkt. 1 at ¶ 56.

### 2.   Wells Fargo's Motion to Dismiss *Braxton*

On June 13, 2022, Wells Fargo moved to dismiss the *Braxton* complaint under the first-filed rule because, according to Wells Fargo, the narrow *Braxton* refinancing class was subsumed by the broader *Williams* class. Dkt. 39. Notably, Wells Fargo did not move to dismiss any of the other related cases. The *Braxton* Plaintiffs opposed, and on July 19, 2022, the Court denied Wells Fargo's motion to dismiss, explaining that

> [t]he *Williams* action involves a proposed class of African American applicants who applied for, received, or maintained credit from Wells Fargo related to residential real estate, while the *Braxton* action involves a proposed class of African American homeowners who submitted applications to refinance their home mortgages. **The cases are sufficiently similar for purposes of relation under the District's local rules, but not so similar that Braxton is subsumed in Williams.**

Dkt. 44 (emphasis added).

### 3.   *Braxton* Seeks Appointment of Interim Counsel

On July 28, 2022, the *Braxton* Plaintiffs filed a Motion for Appointment of Interim Counsel for a Putative Refinancing Class. *Braxton* Plaintiffs' Request for Judicial Notice, Exh. A. As stated in that motion, *Braxton* was the first filed case on behalf of a putative class of Black homeowners discriminated against in the refinancing process, and the *Braxton* Firms have already performed an extensive investigation relating to that specific class, have the experience and resources necessary to prosecute the case on behalf of Black homeowners, and will be prejudiced if lumped into a broader class of origination plaintiffs and/or non-Black applicants. *Id.* at 1. The *Braxton* Firms do not seek to be appointed counsel for prospective borrowers harmed outside the refinancing process and do not seek to be appointed counsel for non-Black homeowners. *Id.*

1    The *Braxton* motion triggered the filing of similar motions by counsel for *Williams, Ebo,*

2   *Thomas, Pope,* and *Perkins*.

3    **B.    The Advanced *Braxton* Amended Complaint**

4    The *Braxton* Plaintiffs intentionally brought their case *only* on behalf of Black

5   homeowners who sought to refinance existing loans through Wells Fargo.  The *Braxton* Plaintiffs'

6   continuing development of their case has only cemented their position that their class was

7   uniquely affected by Wells Fargo's discriminatory practices.  The facts reflected in the *Braxton*

8   FAC demonstrate that the *Braxton* Plaintiffs are already pursuing their claims on a faster timeline

9   than the remaining cases Wells Fargo seeks to combine with *Braxton*.

10    The *Braxton* Plaintiffs, in their 198 paragraph FAC, explain Wells Fargo's COVID 19-era

11   refinancing application process in detail, beginning with Wells Fargo's steps gathering geographic,

12   financial, and demographic data into Wells Fargo's Form 1003 through a platform developed by

13   Blend Labs, including details about specific in-person efforts to gather information on applicants

14   that could identify them as Black homeowners.  Dkt. 14 at ¶¶ 70-77.  Next, the *Braxton* Plaintiffs

15   explain, the information that has been gathered, including the data reflecting racial judgments, is

16   inputted into Wells Fargo's "CORE" automated underwriting system.  *Id*. at ¶ 78.  According to the

17   confidential informants the *Braxton* Plaintiffs spoke to, CORE then classifies applicants into four

18   categories, two of which automatically approved the loan, one of which referred the application to

19   manual underwriting, and one of which automatically denied the application.  *Id.*  Black refinancing

20   applicants were consistently relegated to the latter categories.  *Id.*  Further, again according to

21   confidential informants, Wells Fargo severely understaffed the underwriting departments designed

22   to flag potentially discriminatory outcomes, even going so far as to announce internally a decision to

23   increasingly rely on the automated underwriting system.  *Id*. at ¶ 82.

24    Underlying that automated underwriting system, the *Braxton* Plaintiffs' investigation

25   shows, were "overlays" that served to single-out refinancing applications from Black

26   homeowners.  Dkt. 14 at ¶¶ 83-91.  These overlays included geographic indicators, used to

27   identify borrowers with property in Black-majority neighborhoods and classify them as lending

28   risks, *id*. at ¶ 84; post-closing liquidity requirements, which Wells Fargo dramatically increased

during the pandemic knowing that Black Americans typically hold less than one-third the liquid assets as White Americans, *id.* at ¶¶ 85-86; racially biased appraisals, which Wells Fargo plugged into its automated underwriting system without making any adjustment for the well-known disparity between the appraisal values of Black-owned properties as compared to equivalent White-owned properties, *id.* at ¶¶ 89-90; and increased FICO requirements which, according to a confidential informant, Wells Fargo moved its minimum requirement from 600 to 620, removing four times as many Black applicants as White applicants from consideration, *id.* at ¶ 91.  The *Braxton* FAC also detailed the pernicious demographic indicators overlayed onto the Wells Fargo algorithm.  The overlays use Bayesian Improved Surname Geocoding and other advanced statistical measures to estimate the likelihood that an individual is a Black American given their surname and location.  The FAC relays information from responsible employees at Wells Fargo, even listing the specific equations involved.  *Id.* at ¶¶ 87-88.

Finally, the *Braxton* FAC explains how these practices at Wells Fargo led to discriminatory results against Black homeowners in the refinancing process, noting that the underwriters with supposed oversight of the process were systematically disincentivized to check the results of the automatic system, despite Wells Fargo's knowledge of discriminatory outcomes. *Id.* at ¶¶ 100-05.  Then the complaint reveals the extent of the impact on Black homeowners as seen through public statistics.  *Id.* at ¶¶ 106-19.

The *Williams*, *Pope*, *Thomas*, *Ebo* and *Perkins* complaints, on the other hand, do not contain the same detailed factual allegations or support.  *Williams* only mentions "redlining" and does not describe the refinancing application process, does not address the automated underwriting system, does not mention, let alone explain any overlays, and does not address underwriting staffing.  *Pope* and *Thomas* also only contain references to "redlining" and provide no explanation of Wells Fargo's underlying practices.  The amended *Pope* complaint is 70 paragraphs long, with 33 paragraphs of factual allegations.  *See* Case No. 4:22-cv-01793, Dkt. 6.  The *Pope* complaint pastes charts and cites statements from Bloomberg articles and analysis, as well as an analysis by the Boston Federal Reserve.  *Id.*  The *Pope* complaint includes three paragraphs about the Wells Fargo application process, *id.* at ¶¶ 25-27, and does not describe in detail Wells Fargo's process in

collecting and analyzing applicant information.  The only data discussed in the *Pope* complaint is drawn from a Bloomberg analysis.  The *Thomas* complaint is identical to the *Pope* amended complaint in all material respects, again only reflecting data drawn from the Bloomberg analysis. *Compare* Case No. 4:22-cv-01793, Dkt. 6, *with* Case No. 3:22-cv-01931, Dkt. 1.  *Ebo* does not address or elaborate on Wells Fargo's automated underwriting system or its discriminatory overlays.  The 84 paragraph *Ebo* complaint, including 49 paragraphs of factual allegations, also draws extensive data from the Bloomberg analysis, *see* Case No. 3:22-cv-02535, Dkt. 1 at ¶¶ 19-20, and purports to make two allegations based on a review of the data that Bloomberg also reviewed, *id.* at ¶¶ 23-25.  The complaint makes no allegations about Wells Fargo's collecting of information from applicants and makes no allegations about Wells Fargo's algorithm or underwriting practices.

The *Perkins* complaint, filed three months after Braxton, contains 102 paragraphs, 22 of which are factual allegations.  *Perkins* states that Wells Fargo's machine learning processes are responsible for Wells Fargo's discriminatory outcomes (repeating many of the allegations made in the original *Braxton* complaint), but it does not detail the information incorporated into the algorithm aside from an applicant's location.  *Perkins* summarizes the totality of Wells Fargo's discriminatory scheme in five generic paragraphs.  Case No. 3:22-cv-03455, Dkt. 1 at ¶¶ 36-40.

In contrast to the *Braxton* FAC, there are no allegations in *Williams*, *Pope*, *Thomas*, *Ebo*, or *Perkins* reflecting detailed information gleaned from confidential informants.

## III.   LEGAL STANDARDS

### A.   Motion to Consolidate

Courts have ample discretion to decline to consolidate cases before them, even cases that have some common issues of fact and law.  *Campbell*, 2008 WL 3836972, at *2 (E.D. Cal. Aug. 14, 2008).  A party moving for consolidation has the burden of "establishing that the judicial economy and convenience benefits of consolidation outweigh any prejudice that would result from consolidation."  *Cook v. AT&T Mobility, LLC*, No. 10-cv-8870 R (OPx), 2011 WL 13217794, at *1 (C.D. Cal. Jan. 7, 2011).  When assessing a consolidation motion, "considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial."

*Campbell*, 2008 WL 3836972, at *3 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1484 (2d Cir.1990)).  Thus,

> [t]he critical question [is] whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Morgan v. Napolitano*, No. CIV. S-09-2649 LKK/DAD, 2012 WL 4755034, at *2 (E.D. Cal. Oct. 4, 2012).

### B.   Motion to Appoint Interim Lead Counsel

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  This rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class."  Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.  It recognizes that "it will usually be important for an attorney to take action to prepare for the certification decision" and thus that designation of interim counsel may be necessary due to "rivalry or uncertainty."  *Id.*; *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2017 WL 4071368, at *2 (N.D. Cal. Sept. 14, 2017) (stating that this rule "authorizes [a] court to designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class").  Doing so "clarifies responsibility for protecting the interests of the class during precertification activities."  Manual for Complex Litigation (Fourth) § 21.11 (2004).

"Although Rule 23(g)(3) does not provide a standard for appointment of interim counsel, courts typically look to the factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)."  *In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-RMW, 2016 WL 3401989, at *2 (N.D. Cal. June 21, 2016).  These are "(1) the work counsel has done in identifying or investigating the potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  Fed.

R. Civ. P. 23(g)(1)(A).  "But these considerations are not exclusive.'"  Wright & Miller, *Appointment of Class Counsel*, 7B Fed. Prac. & Proc. Civ. § 1802.3 (3d ed.)  The Court also "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## IV.    ARGUMENT

### A.    Consolidation Would Prejudice the *Braxton* Class by Diluting Its Claims and Slowing Its Substantial Progress

#### 1.    The *Braxton* Class Will Be Prejudiced by the Dilution of Its Claims

Consolidation is inappropriate if it results in "inefficiency, inconvenience, or unfair prejudice to a party." *Sanders v. VeriFone Sys., Inc.*, No. 13-cv-01038-EJD, 2013 WL 5550435, at *2 (N.D. Cal. Oct. 7, 2013).  Consolidation would be unfair and prejudicial to the *Braxton* class because it would significantly dilute the *Braxton* Plaintiffs' allegations and materially hamper their claims, most importantly their ability to obtain class certification.  *See Jackson v. City & Cty. of San Francisco*, No. C 09-2143 RS, 2010 WL 11582918, at *1 (N.D. Cal. Dec. 16, 2010) (noting that it would be "unfair" to force a narrower class into a broader class via consolidation).

A large class encompassing all minority mortgage applicants, with no defined class period, will inevitably present more concerns with respect to commonality, as well as with the adequacy and typicality of the associated class representatives.  Indeed, one of the (many) reasons the *Braxton* Plaintiffs filed on behalf of only Black homeowners discriminated against in the refinancing process was the feasibility of certification of that targeted class.  Lumping the *Braxton* class into a far broader and varied class will undeniably undermine the *Braxton* Plaintiffs' ability to certify their class, and, thus, the circumstances here do not warrant consolidation.

#### 2.    The *Braxton* Class Will Be Prejudiced by the Delay Consolidation Would Cause

The *Braxton* Plaintiffs will also be prejudiced by the delays connected to a consolidated matter.  The factual development thus far in *Braxton*—incorporating detailed information from confidential witnesses that is absent from any of the other pending cases—exceeds the factual development in other cases Wells Fargo seeks to consolidate.  *See supra* Section II.B.  The *Perkins* complaint does not contain a comparable level of detail.

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION FOR APPOINTMENT
OF INTERIM LEAD COUNSEL FILED BY GUSTAFSON GLUEK PLLC

Further, the *Braxton* Plaintiffs have already served document requests on Wells Fargo concerning the refinancing practices and associated underwriting department.  Wells Fargo's response to those requests will be triggered after the parties' Rule 26 meet and confer.  The *Perkins* Plaintiffs have not issued any document requests to Wells Fargo.

Combining *Braxton* with *Perkins* will lead to a halt in the progress already made in *Braxton* while the broader plaintiffs group in *Perkins* attempt to catch up.

### 3.    The Classes Across the Cases Are Different

When putative classes asserted in multiple cases are substantially different, as they are here, consolidation is not appropriate.  *Lopez v. Liberty Mut. Ins. Co.*, No. 14-cv-05576 BRO (JCx), 2014 WL 12853283, at *6 (C.D. Cal. Oct. 24, 2014).  In *Lopez*, the court denied plenary consolidation of pending class actions because there was "a legitimate concern regarding the scope of the putative classes in each case."  *Id.*  The court reasoned that if discovery revealed that the classes were in fact different, then the class actions should not be consolidated.  *See id.* (reasoning that if the classes are "materially distinct" then "it would be prejudicial to Plaintiffs to consolidate these classes").

The potential classes in *Williams, Braxton, Thomas, Ebo and Perkins* are each different. That is an undisputed fact.  The proposed classes in *Pope and Thomas* include non-Black minority applicants.  The proposed classes in *Ebo* and *Williams* address mortgage origination in addition to refinancing and have an undefined class period.  And the *Perkins* proposed class is the broadest of all as it includes non-Black minority applicants *and* mortgage origination in addition to refinancing.  Because there are different class definitions across the six cases, and because the *Braxton* class is the most narrow and progressed class, the Court should not consolidate all of the cases and diminish the *Braxton* claims.

### 4.    Any Convenience and Economy from Consolidation Will Not Override the Prejudice to the *Braxton* Class

Consolidation should only be granted when "consolidation would produce substantial tangible efficiencies warranting the Court to override the Plaintiffs' autonomy in mastering their own complaints."  *Anderson Living*, 297 F.R.D. at 631 (explaining that the efficiencies the moving

party claimed would result from consolidation did not outweigh the plaintiffs' right to pursue the case that they had initiated and denying consolidation).

The *Perkins* plaintiffs claim, without analysis, that consolidation is proper and "crucial for the effective and efficient administration of justice for all of the Parties." (Mot. at 8:7-8.) While the motion for appointment of interim lead counsel does not explain *why* consolidation would provide for the efficient administration of justice *here*, the *Perkins* Plaintiffs argued in their Response in Support of Defendants' Motion to Consolidate[5] that consolidation would prevent "inefficient and duplicative discovery." Case No. 3:22-cv-03455, Dkt. 38 at 11. But "[d]uplicative discovery can be avoided by permitting discovery in each related action to be used in all related actions." *Campbell*, 2008 WL 3836972, at *3; *Anderson Living*, 297 F.R.D. at 631. Thus, "many of the efficiency gains sought to be achieved by consolidation can also be achieved without consolidation," *id.*, and there is no reason for the Court to dilute the *Braxton* claims in order to gain any judicial economy.

      **B.**    **The _Braxton_ Firms Must Lead the _Braxton_ Class**

          **1.**    **The _Braxton_ Firms Filed the First and Only Action on Behalf of Black Refinancing Applicants**

The *Braxton* Firms were the first to file a class action alleging that Black borrowers were discriminated against in the home loan refinancing process. "Courts have held that the first-to-file factor may be considered an 'objective tie-breaker' in appointing lead counsel" in close cases. *In re Apple Inc. S'holder Derivative Litig.*, No. 19-cv-05153-YGR, 2020 WL 3507426, at *1, n.2 (N.D. Cal. June 29, 2020); *see also Robbins v. Phillips 66 Co.*, No. 18-cv-00292-RS, 2019 WL 13119275, at *3 (N.D. Cal. Aug. 8, 2019) ("The only factor that separates the two is that [firm A] has been involved in this litigation from the outset. [Firm A] filed the [] matter first . . . they therefore will be appointed as interim class counsel.").

In addition, the first-filed *Braxton* complaint spurred the filing of all the subsequent refinancing complaints, further supporting the appropriateness of appointing the *Braxton* Firms as

---

[5] The *Perkins* Plaintiffs directed this Court to its Response in Support of Defendants' Motion to Consolidate for a more "detail[ed]" explanation as to why the matters should be consolidated. Mot. at 8.

lead counsel. *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) ("[T]he Scott/Lowey complaint is clearly the template for the great majority of the cases filed since and . . . weighs in favor of appointment.")

### 2.    The *Braxton* Complaint is the Most Comprehensive Pleading

As evident in the comprehensive FAC filed in *Braxton*, the *Braxton* Firms have performed substantial work in building a case focusing on Wells Fargo's specific set of policies and practices relating to refinance applications and its discriminatory impact on Black borrowers.  In appointing interim lead counsel, courts evaluate "[t]he quality of pleadings [to help] determin[e] counsel's ability and adequacy to represent the interests of the class."  *Case v. Merlin Ents. Grp. U.S. Holdings Inc*., 20-cv-01049 JAH-MSB, 2021 WL 1195813, at *5 (S.D. Cal. Mar. 30, 2021); *see also Cadena,* 2020 WL 3107798, at *4 (selecting as interim lead counsel the two firms that prepared the most "detailed complaints."); *Potzner v. Tommie Copper Inc*., 2016 WL 304746, at *1 (S.D.N.Y. Jan. 4, 2016) ("As reflected in the detailed 86-page complaint filed in the Lucero action, Faruqi and Marron have done more work than Cuneo and Lockridge to investigate and identify potential claims in this action.").

In preparing their case against Wells Fargo, the *Braxton* Firms interviewed several confidential informants, which revealed (1) that the bank collects "key geographic, financial, and demographic data" and processes them in a CORE algorithm, (2) that Wells Fargo management got real-time data about how its policies were worsening racial disparities, and (3) that, rather than rectifying the problem, management pressured loan officers to increasingly rely on these discriminatory algorithms. Dkt. 14 at ¶¶ 70-78, 103-105; *see Lowery v. Spotify USA Inc.*, No. 15-cv-09929-BRO (RAOx) 2016 WL 6818756, at *3 (C.D. Cal. May 23, 2016) (selecting as interim lead counsel the two firms that "interviewed numerous industry participants to confirm the theory of the case, develop the allegations, and understand the industry.")  This research is reflected in the *Braxton* FAC, which goes into great detail discussing how the algorithm's use of geographic indicators, Bayesian Improved Surname Geocoding (which were used as demographic indicators), post-close liquidity requirements, uncorrected and racially-based home appraisals, and indefensibly high FICO requirements can cause disparate racial disparities and impact.  *Id*. at ¶¶

82-92.  At the heart of the Wells Fargo process challenged in *Braxton* is a new online mortgage application and associated tools and the manner in which Wells Fargo supervised (or failed to supervise) the operation of these data collection and review processes.  *Id*. at ¶¶ 82-91, 100-105.

The *Braxton* Firms also interviewed scores of Black victims and listened to their stories.  *See Cadena*, 2020 WL 3107798, at *5 (selecting as interim lead counsel the two firms that "interviewed approximately 80 putative class members as part of an ongoing independent investigation of Plaintiffs' claims.").  The *Braxton* Firms have further consulted with experts with domain expertise in algorithmic modeling and discriminatory biases associated with artificial intelligence and machine learning, consulted with civil rights and housing organizations seeking to support the *Braxton* Plaintiffs, and engaged a highly-regarded damages expert to assist the class on analyzing damages and the value of other non-monetary relief.  *See Braxton* Plaintiffs' Request For Judicial Notice, Ex. B, Ellis Declaration ¶ 8*.*  The *Braxton* firms' work in this case so far reflects the care and commitment they have devoted, and will continue to devote, to this litigation and the Putative Refinancing Class.

In support of its bona fides, the *Perkins* Plaintiffs contend that they "interviewed dozens of individuals . . . over the last six months," "consulted with experts," and "researched the potential scale of damages."  (Mot. at 9:18-23.)  While the *Perkins* complaint does not reflect the fruits of such labor and includes allegations that are vague or conclusory, the *Braxton* amended complaint sets forth, in detail, the information obtained from the confidential informants interviewed by the *Braxton* Firms.  Additionally, the *Braxton* Firms, of course, have also enlisted expert consultants.  *See Braxton* Plaintiffs' Request For Judicial Notice, Ex. B, Ellis Declaration ¶ 8.  In any event, the *Perkins* Plaintiffs cite no case law suggesting that purported interviews preceding the filing of a complaint alleviate the operation of the first-filed rule, or, moreover, that these consultations with experts somehow strengthen the Perkins Plaintiffs' threadbare complaints compared to the detailed and lengthy *Braxton* complaints.

### 3.   The *Braxton* Firms Are Experienced in Both Prosecuting *and* Defending Class Actions

Courts applying Rule 23(g) emphasize proposed class counsel's experience and knowledge

of the applicable law.  *See, e.g., In re Cree, Inc. Sec. Litig.,* 219 F.R.D. 369, 373 (M.D.N.C. 2003).
Courts should consider not only counsel's expertise with the substantive law at issue, but also
"counsel's experience in handling class actions, other complex litigation, and the types of claims
asserted in the action."  Fed. R. Civ. P. 23(g)(2).

The *Braxton* Firms are uniquely qualified to serve as interim  counsel for the Putative
Refinancing Class.  Consisting largely of former "big firm" partners and associates, the *Braxton*
firms have extensive experience both prosecuting *and* defending class actions.  This dual
experience makes the *Braxton* Firms uniquely positioned to represent the Putative Refinancing
Class because of their greater knowledge of the law and the pitfalls and limitations of their
putative plaintiffs' theory.  The *Braxton* Firms' extensive experience is set forth, in detail, in their
motion for appointment of lead counsel over the narrow *Braxton* class.  *See Braxton* Plaintiffs'
Request for Judicial Notice, Exhs. A, B, & C.

### 4. <u>The *Braxton* Firms Are Willing to Commit Significant Resources to This Case</u>

Rule 23(g) mandates the Court consider the resources proposed class counsel will commit
to the lawsuit's prosecution. *LeBeau v. U.S.*, 222 F.R.D. 613, 618 (D.S.D. 2004) ("In considering
the resources that counsel will commit to representing the class, the Court may consider the staff,
supplies and professional commitments of that attorney.").  EGC is a bicoastal firm with 57
lawyers total and has partnered with FSS, a class action boutique.  Each firm is willing and able to
contribute as many of their lawyers as are needed to this litigation as is necessary and efficient.

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the Motion for Appointment of
Interim Lead Counsel filed by Gustafson Gluek PLLC in its entirety.

| | |
|---|---|
| 1 | DATED:  September 9, 2022 |
| 2 | |

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP

By:  _____/s/ Dennis S. Ellis_____
Dennis S. Ellis (SBN 178196)
Trent B. Copeland (SBN 136890)
Ryan Q. Keech (SBN 280306)
Stefan Bogdanovich (SBN 324525)
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697
Email:  dellis@egcfirm.com
             tcopeland@egcfirm.com
             rkeech@egcfirm.com
             sbogdanovich@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Noah S. Helpern (SBN 254023)
Milin Chun (SBN 262674)
801 South Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808
Email:  nhelpern@egcfirm.com
             mchun@egcfirm.com

ELLIS GEORGE CIPOLLONE
O'BRIEN ANNAGUEY LLP
Joseph N. Kiefer (admitted *pro hac vice*) (NY Bar
No. 5345657)
157 West 57th Street, Suite 28 S
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
Email:  jkiefer@egcfirm.com

Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

DATED:  September 9, 2022

FRANK, SIMS & STOLPER LLP
Jason M. Frank (SBN 190957)
Scott H. Sims (SBN 234148)
Andrew D. Stolper (SBN 205462)

By:  _____/s/ Jason Frank_____
Jason Frank
Attorneys for Plaintiffs Aaron Braxton, Gia Gray, Bryan
Brown, Paul Martin and all others similarly situated

1

**ATTORNEY ATTESTATION**

2

Pursuant to Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of this

3

document has been obtained from each of the other signatories.

4

5

_/s/ Dennis S. Ellis_

6

Dennis S. Ellis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE BRAXTON PLAINTIFFS' OPPOSITION TO THE MOTION FOR APPOINTMENT
OF INTERIM LEAD COUNSEL FILED BY GUSTAFSON GLUEK PLLC